```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------X
CHARLOTTE WILEY,

        Plaintiff,                   MEMORANDUM AND ORDER

    -against-                        Civil Action No.
                                     06-CV-172 (DGT)
SECRETARY HENRY M. PAULSON,
UNITED STATES DEPARTMENT OF
THE TREASURY,

        Defendant.
----------------------------X
```

TRAGER, J.:

Plaintiff Charlotte Wiley ("Wiley" or "plaintiff") brings this action against defendant Henry M. Paulson, Jr., United States Secretary of the Treasury ("government" or "defendant"), for discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). The government has moved to dismiss this action pursuant to Title VII's venue provision, 42 U.S.C. § 2000e-5(f)(3) or, alternatively, to transfer venue to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a). For the following reasons, defendant's motion to dismiss or to transfer to the District of New Jersey is denied.

**Background**

**(1)**

**Plaintiff's Title VII claims**

Plaintiff Charlotte Wiley, who is African American, is a former employee of the Internal Revenue Service ("IRS") of the United States Department of the Treasury. Wiley asserts claims based on race, color and gender discrimination and retaliation in violation of Title VII.

Wiley is a resident of New Jersey. See Compl., Ex. D. All of her allegations of discrimination concern her former employment in the Newark, New Jersey office of the IRS, where she served as a Supervisory Tax Specialist, or "Territory Manager." Compl. at ¶¶ 10, 11. The complaint asserts that from August 2004 to September 2005, Wilson was supervised by Sheldon Schwartz ("Schwartz") and that from August 2005 to December 2005, she was supervised by Tom Kerr ("Kerr"). Compl. at ¶¶ 14, 49. Schwartz was based out of Hartford Connecticut, and only infrequently visited the Newark office in which Wiley worked. Id. at ¶ 15. His emails contained a signature line containing his Connecticut address and phone number. See Aff. of Charlotte Wiley in Opp. to Def.'s Mot. to Dismiss, or For Transfer ("Wiley Aff."), ¶ 5. Kerr, who was formerly Wiley's peer, became her supervisor following Schwartz's retirement in August 2005. See Compl. at ¶ 49; Wiley Aff. at ¶ 6. Kerr was based out of Cheektowaga, New

2

York and personally terminated Ms. Wiley at her Newark office on December 16, 2005.  See Compl. at ¶¶ 10, 49, 52.  Wiley asserts that Kerr's stationery and emails indicated that he had a New York address and phone number.  See Wiley Aff. at ¶ 6.  Wiley's allegations of discriminatory treatment are primarily predicated on Schwartz's and Kerr's conduct.

Plaintiff alleges that she was subjected to pervasive discrimination, harassment and retaliation from August 2004 through her termination in December 2005, namely: (1) plaintiff was "micromanaged," criticized and humiliated by Schwartz via email and voicemail, although similarly situated men were not subjected to this conduct (Compl. at ¶ 18, 21, 26); (2) plaintiff was subjected to "snide" remarks, such as Schwartz's characterization of plaintiff's response to an email as a "fiction" (Id. at ¶ 22); (3) plaintiff's name was omitted from a list of Territory Managers (see id. at ¶ 23); (4) plaintiff was detailed to another position in the IRS and asked to move from one location in the IRS's Newark offices to another after being replaced by a less-experienced male colleague (see id. at ¶¶ 26-27; 30); (5) following her demotion, plaintiff was "harassed" more intensely, "request[ed] to perform work that she was unfamiliar with, and giv[en] unreasonably short deadlines" (Id. at ¶ 38); (6) plaintiff was issued an unusually lengthy negative performance evaluation from Schwartz, "populated with inaccurate,

3

negative information about Ms. Wiley's performance" (Id. at ¶ 41; and (7) Kerr flew from Buffalo strictly to hand-deliver her termination notice in the Newark, New Jersey office. (See id. ¶¶ 44-53). None of the alleged acts of discrimination or retaliation took place in the Eastern District of New York. However, some of the decisions that allegedly adversely impacted plaintiff were made in New York, although the effects of each of the challenged actions at issue were felt by plaintiff where she worked, in the IRS's New Jersey offices.

From April 2005 through November 2005, plaintiff filed numerous EEO complaints to report and complain about the differential, treatment on the basis of race, color and gender she experienced at the IRS. See Compl. at ¶¶ 6-9. Each of plaintiff's administrative complaints were dismissed by the Department of the Treasury. Thereafter, this action was filed.

**(2)**

**The location of relevant documents**

The parties dispute the location of many of the documents relevant to this matter. Contrary to defendant's statements, plaintiff claims that the majority of her employment records and performance files were maintained in New York, Connecticut, North Carolina and Georgia on account of her supervisors' locations in those states. See Wiley Aff. at ¶ 7. Moreover, because

plaintiff's supervisors were not located in New Jersey, she argues that the IRS offices in New York, Connecticut, North Carolina and Georgia possess the bulk of emails and correspondence between Wiley and Schwartz and Kerr. Id. at 8. Similarly, contrary to defendant's assertions, plaintiff states that all her finished work product and other work-related files were stored at the offices of her supervisors, in states other than New Jersey. Id. at 9. Finally, plaintiff contends that her "official personnel file" is located in Missouri and the files relating to the EEO complaints are administered and maintained in Texas. See Wiley Aff., ¶¶ 11-12. The parties stipulate that none of plaintiff's employment files are administered or maintained in the Eastern District of New York. See Pl.'s Mem. of Law in Opp. to Def.'s Mot. to Dismiss, or For Transfer ("Pl.'s Mem."), 7.

## Discussion

### (1)

Defendant argues that plaintiff's complaint should be dismissed because the Eastern District of New York is not the proper venue for this action. Once an objection to venue has been raised, the plaintiff bears the burden of establishing that venue is proper. See Micro-Assist, Inc. v. Cherry Commc'ns, Inc., 961 F. Supp. 462, 464 (E.D.N.Y. 1997). Determination of

proper venue in a Title VII claim is governed by 42 U.S.C. § 2000e-5(f)(3). See, e.g., Bolar v. Frank, 938 F.2d 377, 378-79 (2d Cir. 1991); Pardy v. Gray, No. 06-cv-6801, 2007 WL 1825200, at *3 (E.D.N.Y. June 22, 2007). That section provides that Title VII actions may be brought

> [1] in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3).

The Eastern District of New York is a proper venue for this dispute, because plaintiff's allegations meet the criteria for the first of the three bases of venue provided for in § 2000e-5(f)(3). Some of the employment decisions about which plaintiff complains were made in the state of New York, so venue is proper in the Eastern District of New York.

Plaintiff alleges that the discriminatory actions were perpetrated from both New York and Connecticut. Specifically, plaintiff avers that both Kerr and Schwartz harassed her through emails, phone calls and a retaliatory performance review from their offices in New York and Connecticut. Plaintiff contends that "almost every act of discrimination and retaliation . . .

6

suffered was perpetrated from outside New Jersey," namely, because plaintiff "has not reported to any supervisors within the State of New Jersey."  Pl.'s Mem. at 4.  Rather, plaintiff asserts that venue is appropriate in the Eastern District of New York, in part, because her supervisor, Mr. Kerr, "was located in New York, the unlawful employment practices he subjected her to, were from New York, and the decision to terminate her was made in conjunction with Mr. Kerr, who traveled from New York, to terminate Ms. Wiley."  Id. at 11.  Defendant responds that regardless of the location of her manager at the time of the discriminatory actions, the alleged discriminatory effect of Wiley's employers' actions and decisions, including those of Kerr, who was located in New York, were clearly in New Jersey.

Thus, the issue is whether venue is proper where the allegedly unlawful employment decisions were made, or where the effects of those decisions were felt.  In the majority of cases addressing this issue, the arguments of the parties are reversed.  Typically, the employee sues in a district in the state in which she had worked, and the employer moves to change venue to a district in the state in which employment decisions were made.  In such situations, courts have generally refused to transfer venue, holding that venue is proper in the place where the effects of employment decisions were felt, thereby giving effect to plaintiffs' choice of venue.  See, e.g., Passantino v. Johnson

7

& Johnson Consumer Prods., Inc., 212 F.3d 493, 505-06 (9th Cir. 2000); Dean v. Handysoft Corp., No. 04-cv-5387, 2005 WL 362662, at *2 (E.D. Pa. Feb. 15, 2005); Foley v. Sammons Preston, Inc., No. 03-CV-5485, 2004 WL 35438, at *2 (S.D.N.Y. Jan 6, 2004) (denying motion to transfer venue from New York where the alleged discriminatory effect of employment decisions was in New York, even though the decisions were made elsewhere). However, the fact that venue is proper in the place where effects are felt does not mean that venue is improper in the place where decisions were made. Indeed, the Ninth Circuit has explicitly stated that venue is also proper in the place where adverse employment decisions are made. Passantino, 212 F.3d at 506 ("[W]e hold that venue is proper in both the forum where the employment decision is made and the forum in which that decision is implemented or its effects are felt."). Accordingly, plaintiff's allegations that one of her off-site supervisors was located in New York when he engaged in allegedly unlawful employment practices supports a finding for venue to be laid in New York.

Furthermore, even though none of the alleged decisions or actions were made in the Eastern District of New York, Title VII provides that venue is proper "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed." 42 U.S.C. § 2000e-5(f)(3). Courts within the Second Circuit have construed this provision literally, to

find venue proper in any district in the state in which the alleged unlawful acts occurred. See Banfield v. UHS Home Attendants, Inc., No. 96-cv-4850, 1997 WL 342422, at *1 (S.D.N.Y. June 23, 1997) (holding venue proper in the Southern District, even though the alleged discriminatory acts took place in the Eastern District); Rodriguez v. Chandler, 641 F. Supp. 1292, 1302 (S.D.N.Y. 1986) (finding venue proper in the Southern District, even though alleged discriminatory acts took place in the Northern District). Therefore, venue is properly laid in the Eastern District of New York, because plaintiff has alleged discriminatory practices originating from the state of New York.

Because venue is proper in the Eastern District of New York under the first basis set forth in § 2000e-5(f)(3), it is unnecessary to discuss the remaining two bases for venue.

**(2)**

Defendant also moves to transfer venue for reasons of convenience. Under 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Deciding a motion to transfer venue is, thus, a two-step process. First, the court must determine whether the case could have originally been brought in the transferee district. 28 U.S.C. § 1404(a). As

9

discussed above, this case could have been brought in the District of New Jersey, because the effects of the allegedly unlawful employment practices were felt in New Jersey.

Turning to the second step, a district court must examine whether transfer is warranted in light of the following factors: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded a plaintiffs' choice of forum; (9) trial efficiency and the interests of justice, based on the totality of the circumstances. See Cerussi v. Union Coll., 144 F. Supp. 2d 265, 268 (S.D.N.Y. 2001). A district court has broad discretion to balance these factors and consider the evidence of convenience and fairness on a case-by-case basis, with the goal of "prevent[ing] the waste of time, energy and money and . . . protect[ing] litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964); Filmline (Cross-Country) Prods., Inc. v. United Artists Corp., 865 F.2d 513, 520 (2d Cir. 1989) ("The determination whether to grant a change of venue requires a balancing of conveniences which is left to the sound discretion

of the district court.").

Plaintiff argues that the witnesses she plans to call at trial are her supervisors, who are located outside New Jersey. Defendant counters that he will call as witnesses plaintiff's co-workers and subordinates in New Jersey in support of his defense that he had a legitimate, non-discriminatory reason for terminating plaintiff's employment. However, Newark is a mere twelve miles from the Eastern District courthouse in Brooklyn - hardly an insurmountable distance for witnesses to travel. Furthermore, for witnesses traveling from points farther afield, the Eastern District courthouse is served by both JFK and LaGuardia airports, which are no more difficult to get to than Newark airport.

Defendant argues that many of the potentially relevant documents and identifying documents are located in New Jersey, amongst other locations. See Def.'s Mem. of Law in Supp. of Def.'s Mot. to Dismiss or For Transfer ("Def.'s Mem.") at 9. Plaintiff concedes that none of her employment records are located in the Eastern District of New York, but states that, nevertheless, her employment records are located in New York, Connecticut, North Carolina and Georgia - not in New Jersey. See Pl.'s Mem. at 14-15. Moreover, as plaintiff rightly recognizes in her brief, the location of a Title VII plaintiff's relevant employment records and documents holds little weight in today's

technologically-advanced society.  Id.; see also, Foley, 2004 WL 35438, at *3 ("[T]he location of documents factor is neutral in today's era of photocopying, fax machines and Federal Express.") (internal citations omitted).  Accordingly, the location of documents weighs neither for nor against transfer in this case.

As with the convenience of the witnesses, the convenience of the parties would not be significantly improved by a transfer to the District of New Jersey.  As noted, Newark is a scant twelve miles from the Eastern District of New York courthouse, and both are well served by public transportation.  Accordingly, this factor does not weigh in favor of a transfer.

The locus of operative facts is New Jersey, where plaintiff worked, where she suffered the alleged effects of discrimination and retaliation, and where her employment was terminated. Although this factor supports a transfer to the District of New Jersey, it is outweighed by plaintiff's choice of forum. Plaintiff's reasons for choosing the Eastern District of New York for this action are unknown, but her desire to litigate in this district is unmistakable.  She has vigorously defended her right to litigate in the forum of her choice, which is "'presumptively entitled to substantial deference.'"  Macedonia Church v. Lancaster Hotel Ltd. P'ship, 425 F. Supp. 2d 258, 259 (D. Conn. 2006) (quoting Gross v. British Broadcasting Corp., 386 F.3d 224, 230 (2d Cir. 2004).  This deference is diminished "where the

forum is neither plaintiff's home district nor the place where the events or transactions underlying the action occurred," Macedonia Church, 425 F. Supp. 2d at 259 (internal quotations omitted), but given the proximity of the suggested transferee venue to this one, it does not appear that plaintiff is exercising her right to choose the forum to the substantial detriment of defendant. The remaining factors are neutral.

On balance, defendant has not met his burden of showing that a transfer to the District of New Jersey is required for the convenience of the parties and witnesses.

## Conclusion

For the foregoing reasons, the motion to dismiss or transfer to the District of New Jersey is denied.

Dated:     Brooklyn, New York
            July 23, 2007

                                         SO ORDERED:

                                            /s/
                                         David G. Trager
                                         United States District Judge